Jackson *v.* Y. & C. Railroad Co.

───────────◆───────────

\* HIRAM JACKSON *versus* THE Y. & C. RAILROAD CO.

Without some statutory provision, no action can be maintained in the name of an assignee, upon interest coupons, which contain no negotiable words, nor language from which it can be inferred, that it was the design of the corporation issuing them, to treat them as negotiable paper, — or, as creating an obligation distinct from, and independent of, the bonds to which they were severally attached when the bonds were issued.

The negotiability of such coupons is a question of law, to be determined, from the papers themselves, by fixed and well settled rules; and proof of custom, as to the negotiability of them, is inadmissible.

The bonds being specialties, the remedy for breaches thereof, is, by an action, not of assumpsit, but of debt or of covenant broken; not being *legally* assignable, no action is maintainable in the name of the holder, though he be assignee. GOODENOW, J., dissenting.

It is indispensable to its maintenance that the cause of action exist at the time the action was commenced. The statute of 1856, c. 248, does not remedy this defect.

REPORTED from *Nisi Prius*, October term, 1855, by HOWARD, J.

This was an action of ASSUMPSIT, brought on eleven memoranda in writing, called " coupons," issued by the defendant corporation, promising to pay various sums of money on each

───────────────────────────

\* This case was first argued in 1856, re-argued very elaborately in writing, in 1858, and decided by a majority of the Court, as then constituted, although the opinion was not announced until a more recent period.

of said coupons, on the first day of May, 1854. The general issue was pleaded and joined. The plaintiff, after reading the writ and coupons, called Daniel C. Emery, who testified that he signed the coupons declared upon in the writ, as treasurer of the defendant corporation; that these coupons were issued by the said corporation in connection with and attached to certain bonds, upon the same sheets of paper with the bonds, and that they were each and all so issued by the defendant corporation for a valuable consideration, as appeared by the bond book of the defendants, then in Court.

The plaintiff then introduced one of the bonds declared upon in this writ, No. 60, for $300, and the parties agreed that this bond should be a sample of, and substituted for, all the other bonds referred to, by numbers upon the several coupons, declared upon, differing from them only in the number appearing on their face, and in the amount of money therein promised to be paid. Said Emery further testified that all the coupons, declared upon in the plaintiff's writ, were, when issued by the said defendants, attached to bonds as aforesaid.

*On cross-examination,* he testified that the several bonds, to which the coupons declared upon were attached, when first issued by defendants, were issued to different persons, some to E. L. Cummings, and some to others, but none to the plaintiff.

The defendants' counsel then called E. L. Cummings, who, at request of counsel, produced two writs, pending in this Court, each against the said defendant corporation, one in favor of William C. Lord and the other in favor of the witness, on coupons No. 6 of the bonds from which coupons No. 5, declared on in this suit, were taken, and upon other coupons from different bonds.

Defendants' counsel then asked the witness if he owned all the bonds referred to upon the coupons, in the suit at bar, at the date of the writ. The question was objected to by plaintiff, but admitted, and the witness answered that he did then own them.

The plaintiff offered to prove the custom as to the negotiability of these coupons. This testimony was ruled out by the Court. The defendants offered to prove that the bonds, referred to in the coupons in suit, were, when originally issued by the defendant corporation to Cummings and others, as above appears, issued for a less sum than their nominal value. This testimony was excluded by the Court. The case was thereupon taken from the jury, the defendant defaulted, and the case reported by the presiding Judge for the decision of the full Court.

The case was argued by

*E. L. Cummings,* for the plaintiff, and by

*J. C. Woodman,* for the defendants.

The opinion concurred in by a majority of the Judges was drawn up by

TENNEY, C. J.—The plaintiff claims, in this action of assumpsit, the amount due on certain memoranda in writing, called coupons, signed by the treasurer of the defendants. They were originally upon the same sheet, with bonds to which each corresponded respectively, and which were issued by the company and signed by the proper officers, with the seal of the corporation affixed.

None of the bonds, to which the coupons in suit were severally annexed, were made to the plaintiff, and it appeared that he did not own the bonds at the commencement of the suit; and it did not appear that he had any interest in them, at any time.

A copy of the bond, numbered 60, from which one of the coupons in suit was taken, is made a part of the case, and the portion thereof, material to the question before us, is in these words:—"Know all men by these presents, that the York and Cumberland Railroad Company acknowledge themselves indebted to Toppan Robie, or bearer, in the sum of three hundred dollars, which sum they promise to pay Toppan Robie, or bearer, in the city of Portland, on the first day

of November, A. D., 1871, with interest thereon, payable semi-annually, at said city of Portland, on the first day of May and November, in each year, upon the surrender of the corresponding coupon hereto annexed, at the office of the company in Portland." The coupon taken from the bond, of which the foregoing is copied, is in the following terms:—"York and Cumberland Railroad Company. Coupon No. 1. Bond No. 60. On the first day of May, 1852, the York and Cumberland Railroad Company will pay nine dollars, on this coupon, in Portland. $9." signed by the treasurer of the company.

The other bonds, from which the coupons in suit were respectively taken, are in the same form, varying in the amount and numbers, and the other coupons, which are declared upon in this action, are similar in form to the one copied, varying, also, in the sum named and in numbers.

The coupons on their face are not made payable to any person named, nor to the bearer thereof. Each refers, by the number, to the bond with which it was connected, and made part of the same; this is apparent, when separated therefrom. The language of the bond clearly imports, that the expectation of the company, and of the holder of the bond, was, that the coupon would continue to be part and parcel thereof, till the interest, as it should become due and payable upon the bond, at the respective times specified therein, should be paid, and then, the coupon corresponding in time and amount with such interest would be separated from the bond, and surrendered to the company. The possession of the coupon, by the company, and the want of the same upon the bond, or in the hands of the holder, would be evidence of payment, and would supersede the necessity of indorsement of interest, as it should be paid from time to time.

The coupons in this case, containing no negotiable words, nor any language implying, or from which it can be inferred, that it was the design of the company to treat them as negotiable paper, or as creating any obligation, distinct from, and independent of the bonds to which they were severally at-

tached, no action can be maintained thereon, in the name of an assignee without some statutory provision.

The proof offered by the plaintiff, of the custom, as to the negotiability of these coupons, was properly excluded. Whether paper is negotiable or not is a question of law, to be determined from the paper itself, by fixed and well settled rules.

But, it it is said that coupons are negotiable by the custom of merchants. " General mercantile customs, which have frequently become the subject of legal investigation in the course of evidence, when ascertained by long experience, to be of public use and utility, are at last recognized and adopted by the law without further proof." 2 Stark. Ev., 450. In the case of *Edie* v. *East India Company*, 2 Burr., 1216, Justice Fos-TER said, "much has been said about the custom of merchants, but the custom of merchants or the laws of merchants, is the law of the kingdom and is part of the common law. People do not sufficiently distinguish between customs of different sorts; the true distinction is between general customs, which are a part of the common law, and local custom which are not so. This custom of merchants is the general law of the kingdom; part of the common law; and therefore, should not have been left to the jury, after it had been settled by judicial determinations." In the case of *Pillans* v. *Micross*, 3 Burr., 1669, Lord MANSFIELD said, "a witness cannot be admitted to prove the law of merchants."

It is said by Mr. PARSONS, in his work on Contracts, vol. 1, p. 240. — " It may, however, be said here, that we regard the, English authorities as making all instruments negotiable, which are payable to bearer, and are also customably transferrable by delivery, within which definition, we suppose, that the common bonds of railroad companies would fall. Of the coupons attached, which have no seal, this would seem to be probable." These remarks are inapplicable to the coupons, which are the basis of the present suit, they not being payable to the order of any person, or to bearer.

The bonds, with which these coupons were connected, are

specialties, and actions of assumpsit thereon for breaches are not maintainable, but the remedy is by action of debt or covenant broken. And such instruments are not legally assignable, so that a suit can be sustained in the name of an assignee or holder.

In the bonds to which the coupons were originally attached, now in suit, interest was secured equally with the principal. It is not easy to perceive that, so far as the interest is secured by the bonds, a different form of action could be treated as the remedy for the breach of this part of the covenant, from that required, if the company should fail to pay the principal. The coupons attached to the bonds certainly do not cancel or nullify the covenant in the bond to pay the interest, and if suits in assumpsit can be maintained for the former, the company is liable to the payment of double interest.

This action was commenced and the same was tried prior to the statute of 1856, c. 248. It is a general principle that the cause of action must exist at the time it is instituted, as indispensable to its maintenance; otherwise the obligation of the contract would be impaired. No cause for this action in the name of the plaintiff is shown at the time it was commenced, or when the trial took place. And the statute does not profess to remedy this defect.          *Plaintiff nonsuit.*

Goodenow, J., dissenting. — This is an action of *assumpsit*, founded on certain coupons, which were attached to bonds issued by the defendants, payable to Toppan Robie or bearer. It is admitted that the plaintiff is not, and never was, the owner of the bonds from which the coupons offered in evidence have been cut off. It is contended on the part of the defence, that these coupons are not negotiable, and that no action can be maintained upon them, in the name of any other person than the owner of the bonds; and secondly, that if any action can be maintained by the plaintiff, it should be an action of covenant or debt, and not assumpsit.

In *Miller* v. *Race*, 1 Burr., 452, it was settled that property in a bank note passes like that in cash, by delivery;

and a party taking it *bona fide*, and for value, is entitled to retain it as against the former owner from whom it has been stolen; and that property in negotiable instruments will pass like that in coin, along with the possession, when they have been put in that state, in which, according to the usage and custom of trade, they are transferred by one man to another by delivery. 1 Smith's Leading Cases, *Miller* v. *Race*, [253,] note. Whenever an instrument is such that the *legal* right to the property, secured thereby, passes from one man to another, by the delivery thereof, it is, properly speaking, a negotiable instrument, and the title to it will vest in any person taking it *bona fide*, and for value, whatever may be the defects in the title of the person transferring it to him. Ibid.

It appears to be settled, in American cases, that the holder of a negotiable note is, *prima facie*, entitled to recover, upon merely producing the note; but, if the defendant proves that the note was fraudulent in its inception, or fraudulently put in circulation, or stolen, or lost, or obtained by duress, there is thrown upon the plaintiff the burden of proving that he is a holder *bona fide*, and for a valuable consideration. Ibid., 263, *b*, note.

Professor Parsons, in his work on the Law of Contracts, says, (vol. 1, p. 203,) "We may find the reasons of the law of negotiable bills and notes in their origin and purpose. By interchange of property, men supply each other's wants and their own, at the same time. In the beginning of society, this could be done only by actual barter, as it is now among the rudest savages. But very early money was invented as the representative of all property, and as measuring its convertible value. The utility of this means enlarged, as the wants of commerce, which grew with civilization, were developed. But at length more was needed; it became expedient to take a further step; and negotiable paper, first bills of exchange, and then promissory notes were introduced into mercantile use, *as the representative of the representative of property;* that is, as the representative of money. * * But, still, coin was itself a substantial article, not easily moved

to great distances in large quantities; and while it adequately represented all property, it failed to represent *credit*. And this new invention was made, and negotiable paper introduced to extend this representation another degree. It does not represent property directly, but money. And, as in one form, it represents the money into which it is convertible at the pleasure of the holder, so, in another form, it represents a future payment of money, and then it represents credit."

If a note be originally made payable to " bearer," it is negotiated or transferred by delivery only, and needs no indorsement, any person bearing or presenting the note becoming, in that case, the party to whom the maker of the note promises to pay it, and the holder of negotiable paper indorsed in blank, or made payable to bearer, is presumed to be the owner for consideration. Ib. 206. It was the intention of the defendants, in issuing these railroad bonds and coupons, to create a new species of negotiable paper. As such, it would more readily pass into circulation and command a higher price in the market, without increasing their burthens. They could as conveniently pay the interest, as it became due, to the holders of the coupons, whoever they might be, as to the obligees, or bearers of these bonds. There is no promisee named in the coupons. The law will imply that the promise is to the holder, *bona fide*. From the peculiar terms of the contract, it is reasonable to conclude, that the parties understood and agreed that the coupons should, from time to time, as the interest became due, be separated from the bonds, and pass into circulation as the representative of money.

If the action were founded on the bonds for the recovery of the *principal* *sum* and *interest* on the coupons *annexed to them*, it might, perhaps, be successfully contended, that it should be debt or covenant, and not an action of assumpsit.

But it seems, that it is, and was intended to be, a contract in the *alternative*, depending upon future contingencies or acts of the obligees; a contract under seal to pay the obligee or

bearer, if he retains the coupons with the bond, and brings his action to recover principal and interest at the same time; or a promise to pay the holder of the coupons, if the obligee or bearer of the bond shall choose to cut them off, and dispose of them, retaining the bond. It is the same in all negotiable pomissory notes.

"If A in his note promises to pay B, *or his order*, then the original promise is in the *alternative*, and it is this which makes the note negotiable. The promise is to pay either B or some one else, to whom B shall direct the payment to be made. And when B orders the payment to be made to C, then C may demand it under the original promise. He may say the promise was made to B, but it was a promise to pay C as soon as he should come within the condition; that is, as soon as he should become the payee by order of B. And then the law merchant extends this somewhat, by saying that the original promise was in fact to pay either to B or to C, if B shall order payment made to him, or to any person to whom C shall order payment made, after B has ordered payment made to C." 1 Parsons on Contracts, 202, 203.

Cutting the coupons from the bonds, by the obligee, and delivering them to a third person, may be regarded as equivalent to the indorsement of paper payable to order, or the delivery of paper payable to bearer. It would extinguish the claim of the holder of the bonds *pro tanto*, upon the defendants, and create a new obligation, in lieu of it, to pay the same amount to the holder of the coupons.

This would furnish an adequate consideration for the promise of the defendants to pay the bearer or holder of the coupons. To this the defendants may be considered as consenting, when they executed and issued the bonds.

The obligation to pay, "does not rest upon the ground of any actual or supposed relationship between the parties, as some of the earlier cases would seem to indicate." "But upon the broader and more satisfactory basis, that the law, operating on the act of the parties, under the duty, establishes

the privity, and implies the promise and obligation, on which the action is founded." *Brewer* v. *Dyer*, 7 Cush., 337.

Professor Parsons says, (vol. 1, p. 240,) "We regard the English authorities as making all instruments negotiable which are payable to bearer, and are also transferable by delivery, within which definition we suppose that common bonds of railroad companies would fall. Of the coupons attached, which have no seal, this would seem to be probable. But usage must have great influence in determining this question." Note *o* and cases cited.

The case finds, that the plaintiff offered to prove the "custom" as to the negotiability of these coupons, and that this testimony was ruled out by the Court. The ruling of the presiding Justice was not, in this respect, erroneous. It was a question of law. Public policy, as well as the interest of the parties, requires that the question should be settled distinctly, one way or the other, as matter of law, and should not depend upon the verdict of a jury, in each particular case.

"Although an instrument may contain nothing on the face of it, inconsistent with the character of negotiability, still, if it be not accustomably transferable in the same manner as cash, it will not be looked upon as a negotiable instrument. Thus, in *Lang* v. *Smith*, (7 Bing., 284,) a question arising, whether certain instruments called *bordereaux* and *coupons*, which purported to entitle the bearer to portions of the public debt of the kingdom of Naples, were negotiable instruments, the jury having found that they did not usually pass from hand to hand like money; that finding was held conclusive to show that they were not negotiable instruments. Whether an instrument, which has never been solemnly recognized by the law as negotiable, be accustomably transferable by delivery, or not, is a question which must, in each case, be left to the determination of a jury. It was submitted to the jury in *Lang* v. *Smith*, and held to have been rightly so." 1 Smith's Leading Cases, 261, note.

Without any proof of usage or custom, on the part of the

plaintiff, the Court are authorized to decide, from the face of the contract, its origin and purpose, that these coupons are negotiable instruments.

In *Lang* v. *Smith*,— " These," said TISDALE, C. J., " are not English instruments, recognized by the law of England, but Neapolitan securities, brought to the notice of the Court for the first time, and, as Judges, we are not allowed to form an opinion on them *unless supplied with evidence as to the law of the country whence they came.* Judges have only taken upon themselves to decide the nature of instruments recognized by the laws of this country, as bills of exchange, which pass current by the law merchant, divided warrants, or exchequer bills, the transfer of which is founded on statutes, which a Judge in an English Court is bound to know."

In *Clark* v. *Farmers' Manufacturing Co.*, 15 Wend., 256, it was held that a note for the payment of money *under seal*, though in all other respects, like a promissory note, is not *negotiable.* The plaintiff declared in *debt*, as the *indorsee* of the instrument. He proved the death of the *payee*, and the indorsement of the note to him by his *executor*.

It does not appear that the indorsement by the executor was *under seal*.

Without intending to question the correctness of the conclusion of the Court in that case, the case under consideration is regarded as one essentially differing from it. We have before adverted to its peculiarities.

In *Hinkley* v. *Fowler*, 15 Maine, 285, SHEPLEY, J., after stating certain well established rules, says, " Without a violation of these rules, a statute or record, or sealed instrument, may not only be used as evidence, but may form the very foundation out of which arises an action of *assumpsit*."

In *Fenner* v. *Mears*, 2 Bl. R. 1269, the defendant made a bond to one Cox, and indorsed upon it an agreement to pay to any assignee of Cox; the plaintiff being assignee maintained assumpsit.

" *Innes* v. *Wallace*, 8 T. R., 595, was assumpsit by the assignee against the obligor of a stock bond, and the Court

say this is not an action on the bond; that, the assignment is a consideration for the assumpsit, and liken it to an assumpsit on a foreign judgment."

From the best examination and consideration I have been enabled to give this case, I arrive at the conclusion that the coupons declared upon must be regarded as negotiable instruments; and that when transferred, by being cut off and delivered, the holder of them, in good faith and for value, may maintain an action of *assumpsit* in his own name against the defendants.

Note. — Since the above was written, Redfield on Railways has been published, to which I refer, page 595, § 239, and cases there cited.